JONH PALMER AND GEORGE J. PALMER v. LEVI H. ROATH AND CHESTER C. VAN DOREN.

*Sale—Tender of property—Authority of agent—Parol evidence.*

1. The right of the plaintiffs to give in evidence the statements and representations of the agents of a manufacturing company as to the kind, character, and condition of an engine ordered of the company, not varying or contradicting the description in the order, is sustained under the ruling in *Phelps v. Whitaker*, 37 Mich. 72.

2. Where, upon examining an engine ordered through an agent of a manufacturing company, and shipped to the firm of which he was a member, and from whose statements the proposed purchasers were alone informed as to the identity of the engine examined with the one ordered, the agent informs them that if they do not wish to take the engine they need not do so, they claiming that it did not fulfill the requirements of the order and of the representations made in addition to the order, they have the right to assume that the agent has authority to make such statement.

3. The failure of a manufacturing company to keep in a situation for delivery an engine ordered to be manufactured and delivered at a given point, to which it had been shipped, and, on the refusal of the proposed purchasers to accept it, reshipped to the company, is held to estop the company from claiming title to an engine which, by the terms of the order, was to be taken as a cash or down payment on the engine so ordered.

Error to Lenawee. (Lane, J.) Argued July 2, 1891. Decided July 28, 1891.

Trover. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Salsbury & O'Mealey,* for appellants, contended:

1. It was not competent for plaintiffs to show that they were to have any other or different engine than the one described in the order; citing *Adair v. Adair*, 5 Mich. 204; *Savercool v. Farwell*, 17 Id. 308; *Martin v. Hamlin*, 18 Id. 354; *Cline v.*

*Hubbard,* 31 Id. 237, 239; *Johnson v. Sutherland,* 39 Id. 579; *Spence v. Bowen,* 41 Id. 149; *Coon v. Spaulding,* 47 Id. ' 162; *Baker v. Morehouse,* 48 Id. 334; *Carney v. Hotchkiss,* Id. 276; *Bearss v. Preston,* 66 Id. 15.

2. The parol negotiations were merged in the written contract, and the only question to determine the liability of the plaintiffs was, did the engine sent correspond with and fulfill the terms of the written order? and not whether it corresponded with the Crandall engine, or any other engine but the one described in the order; citing *Cash Register Co. v. Blumenthal,* 85 Mich. 464.

3. In support of the proposition that Roath had no authority to relieve plaintiffs from accepting the engine, counsel cited *Hammond v. Bank,* Walk. Ch. 214; *Kornemann v. Monaghan,* 24 Mich. 37; *Busch v. Wilcox,* 82 Id. 336; and where an attempt is made to hold one responsible for the acts of another, claimed to be his agent, the agency must be clearly shown; citing *Campbell v. Sherman,* 49 Mich. 534; and the declarations or assumptions of the claimed agent are no proof of authority, or its extent; citing *Bacon v. Johnson,* 56 Mich. 182.

4. An agent cannot establish his own authority by representations, or assuming to exercise it; hence persons dealing with an agent are bound to ascertain, not only the fact of agency, but the extent of the authority, and, in case either is controverted, the burden is on those who claim its existence to establish it; citing *Rice v. Peninsular Club,* 52 Mich. 87; *Hurley v. Watson,* 68 Id. 531; *Busch v. Wilcox,* 82 Id. 315.

*Watts, Bean & Smith,* for plaintiffs, contended for the doctrine of the opinion.

MORSE, J. This action is brought to recover the value of a second-hand portable engine known as a "J. I. Case Engine."

The plaintiffs were clearly entitled to recover, unless the defendants established one of their three defenses, to wit:

1. That at the time the suit was commenced the engine was the property of the Upton Manufacturing Company, as a down or cash payment for a rebuilt engine ordered of them by plaintiffs.

2. That, if not the property of said Upton Manu-

facturing Company, such company had a lien upon it, and the right to hold it, as security for the damages they incurred, because the plaintiffs did not accept the engine they ordered of said company.

3. That the plaintiffs had sold the engine before the commencement of this suit to Arbuckle & Ryan, of Toledo, Ohio, and had no right to recover the value.

The plaintiffs had verdict and judgment for $313.65.

The order for the engine of the Upton Manufacturing Company was obtained on the 17th day of April, 1889, by the defendant Roath, and one Shettler, general superintendent and manager of the outside business of the company, at the house of the plaintiff George J. Palmer, who then and there signed it. By agreement it was left with defendants, who were the local agents of the company, for the plaintiff John Palmer, father of George J., to sign when he came to Adrian. John Palmer lived in Rome, and George J. in Blissfield, Lenawee county. After George J. had signed the order he went and saw his father, told him what kind of an engine he was to have, and shortly afterwards John went to Adrian and also signed the order, which reads as follows:

## "ORDER FOR MACHINERY.

"[The original order is to be filled out and signed by the purchaser, and forwarded to the Upton Manufacturing Company, Port Huron, Michigan, for registration.]
"Dated at ———, April 17, 1889.

"To the Upton Furnish Company, Port Huron, Mich.:

"You will please manufacture for the undersigned, and deliver on board cars at your factory, on or about the 1st day of June, 1889, one engine, second hand, horse power of engine to be 10 traction. This engine to be rebuilt good and new; 50-inch driver, and 10 and one-half wide.

"And we agree to receive the same on its arrival, and pay the freight and charges, and further agree to pay Upton Manufacturing Company, or agents, on or before the arrival of the machinery above mentioned, the sum of seven hundred dollars, in notes, and one J. I. Case

plain engine, as cash payment; note due Nov. 1, 1889, $250; note due Nov. 1, 1890, $225; note due Nov. 1, 1891,—with interest at 10%, but if paid at maturity, then 7% interest from date.

"Also,—further agree to furnish satisfactory security for the prompt payment of the notes, in the following manner:

" Chattel mortgage on above-described machinery, and also upon ———.

"And it is further agreed that the title, ownership, and right of possession of said machinery hereby ordered shall remain in the said Upton Manufacturing Company until the purchase price thereof is paid or satisfactorily secured, and that the other property above mentioned is hereby sold and transferred to the Upton Manufacturing Company as security for the faithful acceptance of the machinery ordered.

" [A printed warranty then follows, after which are these words:]

"This warranty does not cover second-hand machinery sold.

☞ " This order is taken subject to approval of the Upton Manufacturing Company.

" GEORGE PALMER. (L. S.)
"JOHN PALMER. (L. S.)

"Post office, Blissfield; township, Blissfield; R. R. station, Adrian, Lenawee county, Mich."

May 20, 1889, George J. Palmer received notice from defendants that the engine was ready for him at the depot at Adrian. On the 22nd or 23rd of May, George came to Adrian, examined the machine, and refused to take it, on the ground that it did not comply with the order; and also for the further reason that it did not come up to the representations made by Shettler and Roath when they obtained the order; and that it was not such an engine as it was agreed should be sent to plaintiffs. Afterwards the plaintiffs purchased an engine of Arbuckle & Ryan.

Upon the refusal of plaintiffs to accept the Upton engine, Shettler claimed the J. I. Case engine, and demanded it of George Palmer, who refused to deliver

it, or tell where it was. Learning its whereabouts, Shetler had it drawn up to defendants' place of business, and gave them instructions to hold it for the Upton Manufacturing Company. The plaintiffs then demanded it of defendants, who refused to give it up, and this suit was then begun.

The court disposed of the first and third defenses of the defendants in his charge to the jury. He instructed them that the Upton Company could not claim title to this J. I. Case engine under the cash or down payment mentioned in the order, for the reason that the evidence disclosed that there had been an abandonment on the part of such company of any such right, as they had taken the engine back, and had not kept the offer or tender of delivery good, and were not in a position to insist upon the fulfillment of the contract by plaintiffs. This instruction was correct, in view of the testimony that the engine had been shipped back to the company at Port Huron, and no one could tell what had become of it. It was not kept in a situation to be delivered to the plaintiffs.

As to the third defense, he charged the jury that the defendants could not rely upon the fact that the plaintiffs, in purchasing another engine of Arbuckle & Ryan, had made "a deal" by which they were to turn out the J. I. Case engine to them, for the reason that, in any event, so far as that contract was concerned, the plaintiffs were entitled to the possession of the machine, as no delivery had taken place of the engine to Arbuckle & Ryan; the contract between the latter and the plaintiffs being that plaintiffs should deliver it to them at Toledo, Ohio. This instruction was also correct. It also appeared in evidence, without any dispute, that when it was found that the engine had been taken by defendants a new arrangement was entered into by the parties that a note

should be given to Arbuckle & Ryan by plaintiffs in lieu of this engine, which was done.

This disposition of these two issues left the case to go to the jury upon the question whether or not, under this order, the Upton Company had a lien upon this engine for damages for non-acceptance of the engine shipped by such company upon the order of the plaintiffs. The court said that the case resolved itself into the question whether the engine furnished by the Upton Manufacturing Company was such a one as, under the contract between the parties, the plaintiffs were under obligations to accept, and instructed the jury as follows:

"There was a writing between these parties, which purports to embody at least some portions of the contract between them. So far as it covers the negotiations of the parties it must control. No parol evidence here could change the agreement which the parties have put into the writing, or the stipulations which the parties have put into the writing, they must control, as against other or parol evidence as to what was said. [It does not necessarily include, as the court has held here, the right of the plaintiffs to show that all the stipulations between the parties were not put in the contract; that all the representations which the parties made were not put in the contract.]

" As I said, this contract, in some respects, was reduced to writing as between these parties. It is claimed by the plaintiffs that the writing does not embrace all the representations as to the quality, character, and kind of engine which was to be furnished. But, as I have said, so far as it does provide for the kind and character of engine which should be furnished, it must control; and nothing in the evidence, outside of the contract, can stand as against the contract itself; that is, so far as the evidence may conflict with the provisions of the contract, the contract must control.

" Mr. Bean: Your honor does not mean to say, 'provided the contract has been in any way changed?'

" The Court: I will come that question. It is the presumption, of course, gentlemen, that this contract is as it was made between the parties. It seems that this

contract provides that the engine which was sold was to be rebuilt, as the contract is presented here, good and new; certain provisions as to the power of the engine, as to the size of the wheels, both as to diameter and width of face. These provisions, then, must control as to the kind of engine which was to be furnished. The contract and the evidence together show that a particular engine was in the mind of both parties. They contracted to rebuild and furnish a second-hand engine to the plaintiffs. [Then, whatever representations that were made respecting this particular engine, which were material, and operated to influence the plaintiffs to make the contract to purchase, must be made good in the engine which is furnished, and which the company asks shall be accepted under the contract. If any of the representations as to the character of the engine were not true, substantially,—such representations as were material, and operated to influence the plaintiffs to make the contract to purchase,—then the plaintiffs would be under no obligations to accept.] "

The defendants excepted to the portions of the charge inclosed in brackets.

Upon the trial the plaintiffs were permitted to give in evidence the statements and representations of the agents of the company as to what kind of an engine this was to be, and its character and condition, on the ground that the order was not such a contract as would preclude the plaintiffs from showing anything not in variance or contradiction of its description in the order. The defendants contended that all the negotiations and talks of the parties before the order was signed, or at the time of its execution, were merged in the order, which alone must stand as the contract between the parties. The court was right in his construction of the order. It was not sufficient, standing alone, to constitute the whole contract between the parties. It comes clearly within the case of *Phelps v. Whitaker,* 37 Mich. 72. See, also, *Weiden v. Woodruff,* 38 Mich. 131; *Wood, etc., Machine*

*Co. v. Gaertner,* 55 Id. 455. This disposes of a majority of the assignments of error.

The plaintiff George J. Palmer testified that, when he went to examine the engine, at the depot at Adrian, Mr. Roath said to him, "Now if you do not want to take this engine, you need not take it;" and that he acted upon this declaration of Mr. Roath, and went off and purchased another engine. The court instructed the jury that if they found that Mr. Roath said this (which was denied by Roath), and the plaintiffs acted upon it, then the plaintiffs would be entitled to recover.

In view of the fact that Roath was one of the agents of the company who obtained the order; that he was the local agent at Adrian; that the engine was shipped to his firm, and not direct to plaintiffs; and that all the plaintiffs knew as to this engine being sent as the one to fill their order was what Roath said,—we think that Mr. Roath had authority to bind the company in respect to the taking of this engine. At least the plaintiffs had the right to assume that he had such authority. No error was therefore committed in this instruction.

The plaintiffs' counsel contend that this order was not binding upon plaintiffs until it had been accepted in writing by the company, and the plaintiffs notified of such acceptance, as the order, by its terms, was subject to the approval of the company, and had no life until accepted by them; and that, until accepted, it was of no more force than a verbal promise would have been, and such a promise would have been void under the statute of frauds. The case of *Weiden v. Woodruff,* 38 Mich. 130, which is similar to the one before us, is relied upon to support this contention. As the case stands, we do not consider it necessary to pass upon this point, as we find no error in the proceedings below.

Some questions are raised touching the admission and rejection of testimony, but we find no material error in any of them, and there is no necessity for mentioning them here in detail. The court was very liberal in the admission of testimony, and in the end all the material facts necessary to a proper understanding of the case by the jury were admitted, and we cannot find that any legal or competent evidence was excluded.

The judgment is affirmed, with costs.

CHAMPLIN, C. J., McGRATH and LONG, JJ., concurred. GRANT, J., concurred in the result.