| | |
|---|---|
| 98 | 163 |
| 106 | 381 |
| 98 | 163 |
| 117 | 698 |
| 98 | 163 |
| 156 | ³248 |

MINERVA A. MILLER v. THE MINOR LUMBER COMPANY AND JOHN NICHOLSON.

*Public policy—Agreement not to prosecute—Duress—Ratification.*

1. An employer has the right to receive money from an employé, or from his wife or any other person by his procurement, in payment for money embezzled by the employé, so long as he does not transgress the law by promising, either expressly or by implication, not to prosecute the employé criminally for the embezzlement.[1]

2. A deed from a wife, secured through threats of the institution of a criminal prosecution against her husband for embezzlement from the grantee, is not void, but only voidable, at her option.

3. A wife executed a deed of a house and lot owned by her, under duress, caused by the threatened prosecution of her husband for embezzlement from the grantee. Afterwards, and while her husband was out of the country, the grantee purchased her furniture in consideration of the execution by her of a quitclaim deed of the premises, which she was informed would cut off her option to avoid the former deed. After she had surrendered possession of the premises, her husband was arrested for other embezzlements discovered after the execution of the second deed, and she filed a bill to set aside both deeds. And it is held that by executing the second deed she parted with whatever rights she had in the premises.

Appeal from Alpena. (Simpson, J., presiding.) Argued November 1, 1893. Decided December 22, 1893.

Bill to set aside certain deeds. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*J. D. Turnbull,* for complainant.

*William E. Depew* and *Frank Emerick,* for defendants.

HOOKER, C. J. The complainant's husband, being in

---

[1] See *Wolf v. Troxell Estate,* 94 Mich. 573.

the employ of the Minor Lumber Company, embezzled about $10,000 of the employer's money. The fact that he was the embezzler of a small amount was accidentally discovered by a member of the company, and Miller admitted the fact, and confessed to other instances. The services of one O'Neil, a private detective, were secured, and Miller was kept in his custody. He was not arrested, and remained with O'Neil by consent, but it was undoubtedly understood by all that he was not to be suffered to depart. Miller gave up over $4,000 of the money, which left a shortage of about $6,000. He then proposed to go to Battle Creek, and have his wife deed to the company a house and lot in Alpena, the title to which was in her. The deed was drawn, and he was permitted to go with O'Neil to Battle Creek, where they found complainant at the sanitarium, in bed, having just undergone a surgical operation. She reluctantly gave the deed. The parties differ as to what occurred there, but we are satisfied that, while no express promise was given by the defendants that Miller should not be prosecuted, it was so understood by complainant, and but for that understanding the deed would not have been given, and that, had not the deed been given, Miller would have been prosecuted. Subsequently complainant returned to her home in Alpena with the intention of surrendering the premises to the defendants, and opened negotiations with them for the sale of her furniture, which was in the house, in the course of which she said that she had been informed that she could have the deed set aside. The defendants finally agreed to purchase the furniture for $1,100, on condition that she would execute a quitclaim deed of the premises, which she was informed would cut off any right she might have in the same. She stated that she did not intend to try to get the property back, and signed the deed and bill of sale, and received $1,100 in cash from the defendants. This second deed

was made in April, the first having been made in February. Up to this time Miller had not returned to Alpena, but did so a short time after the second deed was given. Mrs. Miller remained in the house for a time, and then yielded the possession. It was subsequently discovered that Miller was guilty of still further embezzlements, for which he was arrested at the instance of the defendants. What occurred in relation to these proceedings is not very clear, but some correspondence passed between Mrs. Miller and Mr. Kelley as follows:

"ALPENA, October 4, 1887.
"MRS. W. J. MILLER,

"*Dear Madam:* I have succeeded in getting the paper you wanted signed by Mr. Maltz, but not in time to take same to the train this morning, as was understood by myself and A. N. S.. therefore I will retain same until he, A. N. S., returns, and then have it signed and delivered to you in accordance with our understanding.

"Yours respectfully, R. J. KELLEY."

"As individuals or as members of the Minor Lumber Co., we will not pursue or press the prosecution instituted against W. J. Miller at Alpena, and will put nothing in his way to prevent him from earning an honest living.

[Signed]   "GEORGE L. MALTZ.
"A. N. SPRATT.

"Dated October 3, 1887."

It appears in evidence that this was not the first time that Miller had been guilty of a crime of this character, and that his wife on several occasions had come to his relief. A year or two after the deed was given she commenced these proceedings.

We have no hesitation in saying that the transaction at Battle Creek was such as to render the deed there taken voidable on the ground of duress. The complainant was sick and excited. All her previous experiences may be supposed to have prepared her mind for such charges, and it is manifest that she would cling to her husband, and

was prepared to aid him in his trouble under the pressure of his importunities, which were supported by the presence of the officer who had him in his custody. We are also convinced that the deed would not have been executed at that time had she not expected that he would not be prosecuted. There is little doubt that the officer so understood it, and perhaps as little of the intention of the defendants to forbear, if the deed were procured, though they at all times refused to promise anything of the kind. While no promise was made, this understanding contributed to influence the complainant.

The second deed was given under different circumstances. Miller evidently understood that he was unsafe in the State, and sojourned for a time in Canada, where the complainant was with him for a couple of weeks or more. We must believe that she was aware that he had no promise of immunity when she returned to Alpena, and she went there to carry out her promise by disposing of her furniture and yielding possession of the premises under the Battle Creek deed. She importuned the defendants to buy it, and, by language which seems to have partaken of the nature of a threat, informed them that she was advised that the deed could be set aside. Apparently this was. intended to make them more willing to purchase the furniture, and it seems to have had that effect; for Spratt at once told her that, in view of that, he should require a new deed if he bought the furniture; and there can be no doubt that he would have refused to buy it had he not supposed that the company was to hold the real estate. The subject was mentioned between herself and Kelley, being introduced by her, when she was informed that she might be able to set aside the deed, but that, if she made the sale of the furniture, and gave a new deed, as required by the company, it would preclude a recovery of the premises. She made haste to close the transaction, and

obtained the money for the furniture. We think that she thereby parted with any right that she had in the premises. The Battle Creek deed was not absolutely void, but at most voidable, at her option. By this last transaction she saw fit to ratify it, and elected to consider it valid. Whatever want of free agency there may have been in her act at Battle Creek, there was no duress or coercion at Alpena. Her husband was then in safety, being out of the country. She had time and opportunity to consider the matter. She was advised of her rights, and knew what she could do, and deliberately chose the course taken. She was no novice in such matters, and may have felt that it was but just to the company to surrender to it property which was perhaps paid for with its money. The letter sent by Maltz and Spratt, dated October 3, in which they stated that they would not press the present prosecution, is not shown to have been connected with the sale of the furniture in April. It does not appear how the letter was procured. It appears that the defendants never promised not to prosecute for the things then discovered; that on all occasions they refused to make such a promise. They had the right to receive money from Miller in payment, and from his wife or any other person by Miller's procurement, so long as they did not transgress the law by promising, either expressly or by implication, not to prosecute.

The decree will be affirmed.

The other Justices concurred.