## SCHMIDT *v.* GAUKLER.

1. LAND CONTRACTS—FORECLOSURE—DEFENSES—ASSIGNMENTS.

On an appeal by the assignee of a land contract from a decree of foreclosure, allegations of fraud, duress, and usury set up in the cross-bill of defendant assignor, even if proven, cannot be taken advantage of by it; claims of such nature being available only to the party injured and are not assignable.

2. SAME—FORECLOSURE—PLEADINGS AND PROOF—VARIANCE.

Where, in such bill, complainant claimed entirely under the terms of the original contract, and defendant assignor in his cross-bill set out the terms of certain supplemental agreements, and complainant's answer to said cross-bill gave his version of their legal effect, there is not such a variance between the pleadings and proofs as to preclude a consideration of the evidence bearing on all the contracts.

3. SAME—FORFEITURE—WAIVER.

Leniency on the part of creditors toward debtors is rather to be encouraged than punished; and, where complainant by supplemental agreements extended the time of payments under the original contract, he did not waive his right to affirmative relief under the original contract, especially since the supplemental agreements expressly provided against such waiver.

4. SAME—FORECLOSURE—DECREE—MODIFICATION.

Where, on such bill, a trust company, acting as trustee under first and second mortgages, was made a party defendant as a subsequent incumbrancer, it appearing, on affirmance of a decree for complainant, that such trustee might have a lien under the first mortgage subsequent to the lien of complainant and prior to that of the second mortgage, and that said company had resigned as trustee under the second mortgage, *held*, that as the rights of the bondholders under the second mortgage were not represented in the court below as against those under the first mortgage, the decree should be so modified as to require any surplus arising from complainant's foreclosure sale to be paid into court, there to abide a determination of the rights of the respective classes of bondholders.

Appeal from Wayne; Murphy, J. Submitted April 12, 1909. (Docket No. 32.) Decided April 16, 1909.

Bill by Carl E. Schmidt against Arthur H. Gaukler, the Electric City Amusement Company, and the Union Trust Company, trustee, for the foreclosure of a land contract. From a decree for complainant, defendant Electric City Amusement Company appeals. Modified and affirmed.

*Keena, Lightner & Oxtoby*, for complainant.

*Russel, Campbell, Bulkley & Ledyard,* for defendant Union Trust Company.

*George W. Radford,* for defendant Electric City Amusement Company.

BROOKE, J. On October 26, 1905, the Electric Park Amusement Company, a Delaware corporation, then owning and operating an amusement enterprise at the intersection of Jefferson avenue and Belle Isle bridge approach in the city of Detroit, located upon property on said corner having a frontage on Jefferson avenue of 125 feet, executed a mortgage to the Union Trust Company as trustee to secure payment of a bond issue of $80,000. This mortgage covered not only all the then existing property of the company, but also by its terms "all other property and assets, real and personal, of every name and nature, which said amusement company   *   *   *   may hereafter acquire." Upon April 30, 1906, Arthur H. Gaukler, president and general manager of said company, in his individual capacity, entered into a contract with Carl E. Schmidt for the purchase of the parcel immediately adjoining the premises already occupied, and having an additional frontage of 175 feet on Jefferson avenue. This contract fixed the purchase price at $56,875, $5,000 of which was paid at or prior to the time of its execution. This contract remained in Mr. Gaukler's individual name, although he was acting for and in behalf of the company

in entering into it. During the year 1906 improvements consisting of various appliances for the amusement of the public were erected upon the Schmidt property to the value of about $30,000. Gaukler defaulted in the payments due upon this contract. He failed to pay the city taxes for the year 1906, and likewise failed to make a $5,000 payment upon the principal due September 10, 1906. On December 1, 1906, complainant began suit in the Wayne circuit court to foreclose said contract. In the meantime contractors and materialmen who had erected the buildings on the Schmidt property had filed liens covering their claims, not having been paid therefor either by Gaukler or by the Electric Park Amusement Company, and they were made parties defendants in the Schmidt foreclosure suit. That case was at issue in January, 1907. In the meantime a further installment of $15,625 had become due January 2, 1907, and had not been paid. Under these circumstances, Gaukler, who was the principal stockholder and moving spirit in the Electric Park Amusement Company, undertook to reorganize the whole enterprise, and to that end urged complainant Schmidt to drop his foreclosure suit, resell to him the property at the original purchase price, $56,875, with different terms as to payment, Gaukler to give a satisfactory bond covering the obligation. Gaukler represented to Schmidt that he would reorganize the company and would issue $300,000 worth of bonds, and would secure the consent of the lienor claimants to accept bonds for their liens and discharge the same. He urged Schmidt to accept bonds in payment for his land, but this Schmidt declined to do. Eventually, however, Schmidt did agree to execute a new contract, which was done on the 25th of March, 1907, to Gaukler, which was by Gaukler with Schmidt's consent immediately assigned to the Electric City Amusement Company. Before Schmidt would agree to the execution of the new contract, he insisted that a second or supplemental agreement should be entered into, by the terms of

which Gaukler and the Electric City Amusement Company (the new company) to whom he was to assign the new contract should agree to pay to Schmidt the interest due and unpaid upon the first contract, the taxes for 1906, and a $200 attorney fee, amounting in all to $3,070.30. Gaukler and the appellant company agreed to these terms of Schmidt, and on the 25th of March, 1907, the same day upon which the land contract was dated, executed such supplemental agreement. The second agreement provided that the gate receipts should be subject to the payment of the $3,070.30 as well as to the payment of the first $10,000 due under the land contract itself. On the following day, March 26, 1907, a further agreement was entered into, reciting that:

"Whereas, it was intended by the parties thereto that the payments due and payable on August 1, 1907, and August 1, 1908, and secured in said contract (the supplemental contract) were to and should have included therewith, and in addition thereto, interest upon such sums remaining due and unpaid upon said contract, at the rate of six per cent. per annum; and whereas, said amounts of interest were not included in said contract, and it is the intention of the parties that such interest items shall be included in such contract: Now, therefore, it is agreed by and between the parties hereto that the paragraphs heretofore mentioned and described shall be extended to secure the party of the second part, the payment of the interest due to him upon the amounts remaining unpaid upon said contract, computed from the date hereof up to the first day of August of each year, to wit, 1907 and 1908."

Prior to the execution of these three contracts, the defendant, the Electric City Amusement Company, had been duly organized, and the Electric Park Amusement Company had deeded to it all its property, real and personal, and on April 1, 1907, had executed a mortgage to the Union Trust Company, trustee, securing an issue of $300,000 covering the property described in the land contract between Gaukler and Schmidt, and also the property described in the mortgage of the Electric Park Amuse-

ment Company to the Union Trust Company, dated October 26, 1905. It was the purpose of Gaukler to appropriate $80,000 of this bond issue to the extinguishment of the original bond issue; to use $52,500 thereof to extinguish the Schmidt contract; to use $38,000 thereof to retire a mortgage of Mrs. Josephine Gaukler; and to use $68,000 thereof to specified lien claimants. The holders of the bonds under the first mortgages to the Union Trust Company apparently never exchanged them for bonds of the new issue. The lien claimants did accept bonds for their liens, and the same were discharged.

During the summer of 1907 much trouble was experienced by Schmidt in securing payments under the second or supplementary contract out of the gate receipts. This contract provided that he was to receive the admission price of the first 130,703 persons entering the park, which would have paid the $3,070.30 back interest and taxes, and the first $10,000 payment under the contract. It very soon became apparent, however, that, if Schmidt insisted upon this contract being carried out to the letter, the concern could not operate. The expectation of Gaukler that, after the reorganization, he would be able to sell the new bonds, was not realized. So, in order to keep the place open, he made frequent appeals to Schmidt or his attorney, Oxtoby, for modifications of the supplemental contract which would permit him to retain sufficient money to operate the plant. These concessions were from time to time made. In the summer of 1907, however, a bill was filed by Schmidt for the purpose of securing the appointment of a receiver to take charge of the gate receipts under the supplemental contract. Some payments having been made shortly after the filing of the bill, it was not pressed, and was finally discontinued by stipulation of the parties in interest. Taken altogether, the payments made during the summer of 1907 were much smaller than those provided for in the contracts, so that on September 19, 1907, the complainant filed his bill for the foreclosure of the land contract of March 25, 1907.

The bill of complaint set out said contract in full and referred to the supplemental agreement, but did not set it out. Defendant Gaukler answered, and in a cross-bill set out the supplemental agreements, and averred that the supplemental agreements were obtained under duress and entered into by him without knowledge of his legal rights under the circumstances; also that they were usurious and void as to the excess thereof over and above the amount of the original purchase price remaining unpaid according to the first contract of April 30, 1906. The defendant the Electric City Amusement Company answered, denying the equities of the bill, but filed no cross-bill. The defendant the Union Trust Company filed its answer, simply denying the right of the complainant to the relief sought. The complainant filed an answer to the cross-bill of Gaukler, in which it set out its alleged rights under the supplemental contracts.

After the hearing in the court below and the filing of the opinion, a decree was proposed on behalf of the complainant. Amendments were offered by the Union Trust Company which were incorporated, and amendments of defendants Gaukler and the Electric City Amusement Company were likewise offered and appear to have been incorporated in the decree. The only party defendant appealing is the Electric City Amusement Company.

The allegation of Gaukler against the complainant of fraud, duress, and usury, even if proven, could not be taken advantage of by this appellant. Claims of this nature can only be set up by the party injured. *Miller v. Lumber Co.*, 98 Mich. 163. Such a claim is not assignable. *Smith v. Thompson*, 94 Mich. 381. But a careful examination of the record convinces us that the claims set up are wholly without foundation in fact. So far from having imposed upon the defendant Gaukler, we are of the opinion that complainant Schmidt acted wholly within his legal rights at the time the resale of the property was effected in the spring of 1907. His foreclosure suit under the first contract was then at issue, and a de-

cree for sale could have been obtained by him in the immediate future. He apparently became convinced that, to follow this course, would imperil the entire project, and, rather than do this, at Gaukler's most earnest insistence he reluctantly accepted the terms proposed in the main by Gaukler himself.

The principal contention of the appellant appears from his brief to be that because the complainant in his original bill set out the land contract only and failed to set out the supplemental agreements, whereas upon the trial proof was made of all three contracts, there is a fatal variance between the pleading and the proof. It seems to us that the appellant entirely overlooks the effect of all the pleadings in the case. It is true complainant claims no rights under the supplemental contracts, and relies solely for his relief upon the original land contract. But it must be borne in mind that defendant Gaukler sets out the supplemental agreements in substance in his cross-bill and complainant in his answer thereto gives his version of their legal effect. Taking the complainant's original bill and his answer to the cross-bill together, the pleadings are not open to the objection raised by defendant's counsel, and all the citations to which counsel have referred the court are without application.

The next claim of appellant is that, because of the provisions of the supplemental agreements and complainant's action thereunder, he has waived his right to affirmative relief under the principal contract now under consideration; further, that his proceedings under the supplemental contract constitute an election of remedies by him; and that he is therefore now estopped from insisting upon the terms of the original contract. It is further claimed by the appellant, as we understand his claim, that if the complainant had insisted upon the strict performance of the supplemental contracts, and had taken the avails of the first 130,703 tickets sold, there would have been no default at the time he filed his bill of complaint, and he urges that, because he did not do this, he is now estopped

from prosecuting his foreclosure under the original contract. It seems hardly necessary to discuss such a proposition. Leniency on the part of creditors toward debtors is rather to be encouraged than punished. His forbearance towards his debtors imposed no new obligations upon them, and, indeed, afforded them, according to their reiterated statements, the only possible means of keeping the enterprise from dissolution. See *Jones* v. *Bowling,* 117 Mich. 288.

As to appellant's claim that complainant is bound by election, we have only to note section 4 of the supplemental agreement, which is as follows:

"Nothing in this instrument contained shall be construed as in any way a waiver of any of the contents of the contract, Exhibit A hereto attached (the original contract); this agreement being executed merely as additional security to said Carl E. Schmidt, in addition to the lien which he retains upon the said land and the rights of foreclosure, specified in Exhibit A, in case of default in the terms thereof."

As to the appellant, therefore, the decree of the court below should be affirmed.

There is another question, however, which demands attention. As before noted, the Union Trust Company as trustee under the Electric City Amusement Company was by the complainant made a party defendant as a subsequent incumbrancer. Upon the trial of the case, as such trustee, the Union Trust Company was represented. It appears in the testimony that, as trustee under the original mortgage for $80,000 made by the Electric Park Amusement Company and which covered after-acquired property, it might have a claim to a lien subsequent to the complainant's upon any surplus for which the land might be sold above the complainant's claim prior to its lien as trustee under the second mortgage. The learned circuit judge took the view that it was entitled to such relief, and permitted it to amend its answer setting up such claim, and the case proceeded upon the assumption that

the pleadings were so amended, and section 5 of the decree below established said claim. Shortly after the entry of said decree, which was on April 30, 1908, the Union Trust Company resigned as trustee for the bondholders under the second mortgage (the $300,000 mortgage). The Detroit Trust Company later was appointed trustee and by an order of this court dated April 12, 1909, was duly impleaded in said cause. Inasmuch as the rights of the bondholders under the second mortgage were not presented in the court below as against the rights of the bondholders under the first mortgage, we are of opinion that the decree of the court below should be modified so as to provide that all moneys received upon the sale of the property in excess of complainant's claim shall be paid into court, there to abide until a determination by the court, upon proof to be taken, of the respective rights of the bondholders under the first and second mortgages to the same. In all other respects the decree of the court below is affirmed.

The complainant will recover costs against appellant.

BLAIR, C. J., and GRANT, MONTGOMERY, and McALVAY, JJ., concurred.