**STATE MUTUAL LIFE ASSURANCE COMPANY OF AMERICA,**
**Plaintiff-Appellee,**

v.

**DEER CREEK PARK et al., Defendants,**

**Burnac Mortgage Investors, Ltd.,**
**Defendant-Appellant.**

**No. 77–1393.**

United States Court of Appeals,
Sixth Circuit.

Argued April 16, 1979.

Decided Dec. 28, 1979.

Stephen Wasinger, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for defendant-appellant.

Robert S. Bolton, Richard P. Saslow, Butzel, Fruhauf, Keidan, Simon, Myers & Graham, Detroit, Mich., for plaintiff-appellee.

Before WEICK, LIVELY and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

While the facts are complicated, the dispute in this Michigan diversity action centers on competing mortgage interests held by plaintiff State Mutual Life Assurance Company of America and defendant Burnac Mortgage Investors, Inc., in a Michigan apartment-condominium development known as Deer Creek Park Apartments.

Prior to April, 1972, the Deer Creek project was beneficially owned by a partnership comprised of Mayer Morganroth and Martin Kopitz, encumbered by a $4,950,000 construction mortgage. In April, 1972, State Mutual became interested in acquiring an investment in the Deer Creek development, and entered into a contract with Deer Creek to obtain fee title subject to the construction mortgage. The deal provided for the purchase price of $7,750,-000 to be met by a payment of $1,800,000 at execution, assumption of the $4,950,000 construction mortgage, and a promise to pay $1,000,000 upon completion of the project by Deer Creek.

Disputes subsequently developed between State Mutual and Deer Creek, the exact nature of which is not fully disclosed by the pleadings and record. In May, 1973, State Mutual made a demand for rescission of the 1972 contract, which initiated a series of negotiations between the two parties. During this period Burnac arrived upon the scene and in June, 1973, transacted a $750,-000 loan to the Three M Construction Company,[1] guaranteed by Deer Creek partners Mayer Morganroth and Martin Kopitz. The

---

1. Morganroth and Kopitz were partners in both the Three M Construction Company and Deer Creek Park, and as such, guaranteed the $750,-000 loan to Three M by pledging the substantial sums expected from State Mutual under the 1972 Agreement of Purchase and Sale between Three M, Deer Creek Park and State Mutual.

primary security for the loan was a pledge of Deer Creek's account receivable under the disputed 1972 contract with State Mutual. No notice of this pledge was given to State Mutual.

In September, 1973, Deer Creek agreed to rescind the 1972 contract and purchase State Mutual's interest in the development. In effect, the 1973 contract simply reversed the 1972 transaction. Deer Creek regained fee title to the project for $7,750,000, with State Mutual receiving a purchase money mortgage, recorded September 14, 1973, in the full amount of the purchase price. State Mutual then disbursed $1,000,000 from the mortgage proceeds to the credit of Deer Creek, and paid off the construction mortgage in the amount of $4,950,000. This agreement extinguished the expectancy which Burnac looked toward for satisfaction of its loan to Morganroth and Kopitz. However, the Deer Creek partners failed to notify Burnac of the new agreement.

One year later, in November, 1974, Deer Creek filed an action against State Mutual in the Wayne County (Michigan) Circuit Court alleging breach of the 1972 agreement due to fraud and duress amounting to "business compulsion." At this juncture, Burnac became aware of the events which had transpired and made inquiry of Deer Creek. Burnac then learned of the rescission of the 1972 contract and the resultant mortgage interest in the project acquired by State Mutual. Further, Mayer Morganroth stated to Burnac that although State Mutual held a first mortgage on the property, it was invalid for the reasons that it was exacted by means of fraud and duress, and was without consideration. Burnac reacted to the change in circumstances by rewriting and extending the loan, taking as additional security a mortgage on the Deer Creek project and an "assignment of receivables" from Deer Creek's state court action.

On December 26, 1974, State Mutual filed this diversity action against Deer Creek in the United States District Court for the Eastern District of Michigan alleging default on the note executed by Deer Creek and seeking foreclosure of the mortgage securing the debt. Deer Creek answered by again asserting the invalidity of the mortgage. Subsequently, Deer Creek's separate state action was removed and consolidated with State Mutual's federal action. Further, upon notice of Burnac's junior mortgage, State Mutual amended its Complaint on June 12, 1975, to include Burnac as a party defendant. In response, Burnac claimed only the benefit of Deer Creek's defenses "as a junior encumbrancer of the real property in question."

In December, 1975, Deer Creek entered into a Stipulation of Settlement with State Mutual, the repercussions of which present the unique procedural problem in this case. Deer Creek agreed to dismiss its action against State Mutual relating to the 1972 agreement, to withdraw all defenses to State Mutual's foreclosure action, and to admit all of the allegations in State Mutual's complaint. In return, State Mutual agreed not to pursue any deficiency judgment against the personal assets of the Deer Creek partners if sale of the mortgaged premises failed to satisfy the obligation. The Stipulation was incorporated into a Consent Order dismissing both causes of action. The order required State Mutual to serve notice on Burnac, which was still uninformed of the Stipulation due to Deer Creek's failure to obtain prior approval of the settlement as required under the purported assignment of the cause of action.

In compliance with the consent order, State Mutual served notice and also filed a Motion for Summary Judgment against Burnac to complete the foreclosure action. The basis for the motion was that Burnac, as an admitted second mortgagee [2] whose

2. Burnac's mortgage, by its terms, expressly states that it is subject to State Mutual's prior recorded encumbrances, as follows:

26. This Mortgage is expressly subordinate to that certain Mortgage in the principal amount of $7,750,000 executed by Deer

only defense to foreclosure stemmed from its claimed derivative advantage of Deer Creek's defenses, could not prevail since Deer Creek's action had been voluntarily dismissed with prejudice and the validity of State Mutual's prior mortgage admitted.

Burnac contested the Motion for Summary Judgment on the basis that it was not bound by the stipulation and admissions made by Deer Creek as to State Mutual's foreclosure action, and that a material question of fact existed as to the validity of the mortgage. Also, since Deer Creek failed to obtain Burnac's prior consent to the voluntary dismissal of its cause of action against State Mutual, Burnac asserts that it is not bound by that part of the stipulation. In order to accomplish its objective, Burnac sought leave to file an amended answer to more specifically detail and incorporate Deer Creek's fraud and duress claims abandoned when Deer Creek requested dismissal of its cause of action.

Judge Damon Keith granted State Mutual's summary judgment motion and denied Burnac's motion to amend its pleadings. Essentially, the ruling stated that no justiciable issue of fact existed because Burnac would not be able to prove the invalidity of State Mutual's mortgage as a matter of law, due to the fact that the later mortgage acknowledged the first, and Deer Creek had admitted the validity of the initial mortgage by stipulation.

Burnac contends that the trial court improperly resolved material questions of fact in granting summary judgment; that the decision to grant the motion was based upon a mistake of law with respect to the effect of the stipulation upon Burnac; that Burnac is not estopped to challenge State Mutual's mortgage; and, that as assignee of Deer Creek's cause of action Burnac has the right to contest the validity of State Mutual's mortgage. On its part State Mutual primarily asserts that Deer Creek's cause of action for fraud and duress is personal and may not be assigned under Michigan law; that the purported assignment was of the "proceeds" only, and did not include the right to bring the cause of action; and finally, that any such claim is derivative and therefore extinguished by Deer Creek's express acknowledgment that the claim is without basis in fact.

## I.

Burnac strenuously urges that the existence of material disputes of fact made it error for the trial court to enter summary judgment. In support, Burnac correctly cites cases in our circuit and elsewhere which make it clear that in ruling on motions for summary judgment the court must construe the evidence before it in the light most favorable to the party opposing the motion. *See, e. g., Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir. 1974); *Broniman v. Great Atlantic & Pacific Tea Co.,* 353 F.2d 559, 560 (6th Cir. 1965); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir. 1962).

The Federal Rules of Civil Procedure permit summary judgment to enter only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). Fed.R.Civ.P. Rule 56(e) specifies the form of the affidavits which may be employed in summary judgment procedures and requires that they be made on personal knowledge, setting forth such facts as would be admissible in evidence. Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded. *Daily Press, Inc. v. United Press International,* 412 F.2d 126 (6th Cir.) *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969). *See also. Hanke v.*

Creek Park, a Michigan co-partnership consisting of Mayer Morganroth, Martin Kopitz and Morton Davidson, sole-copartners, as Mortgagor, in favor of State Mutual Life Assurance Company of America, as Mortgagee, dated September 12, 1973 and recorded September 14, 1973 in Liber 18599, Page 931, Wayne County Records, Register No. J 266569.

*Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir. 1976); *Rossi v. Trans World Airlines, Inc.*, 507 F.2d 404 (9th Cir. 1974); *Ritz v. O'Donnell*, 185 U.S.App.D.C. 66, 566 F.2d 731 (D.C.Cir. 1971).

The trial judge's application of these well-settled principles to the facts before him was complicated by the fact that in resisting summary judgment on alternative grounds, Burnac asserted that, despite the Stipulation of Settlement and admissions made by Deer Creek, it nevertheless possessed an actionable claim against State Mutual (a) as an assignee of Deer Creek's cause of action, (b) as a competing mortgagee, and (c) as the holder of an independent cause of action relating to the alleged breach of the 1972 contract by State Mutual. In support of Burnac's claims, the record contained only cursory adoption of Deer Creek's defenses in Burnac's Answer to State Mutual's foreclosure complaint, and certain information set forth in Burnac's Proposed Amended Answer. These allegations were supported only through hearsay affidavits of Burnac executives concerning representations made to them by Deer Creek partners Morganroth and Kopitz.

In making his ruling Judge Damon Keith took note of the Stipulation of Settlement and concluded as a matter of law that Burnac could not upset State Mutual's prior mortgage since Deer Creek had admitted its validity and Burnac's mortgage was expressly subordinate to State Mutual's. It will therefore be seen that the initial task in this appeal is to determine whether any material question of fact remained making the entry of summary judgment inappropriate. If so, we must reverse.

## II.

Initially, it must be determined whether the assignment by Deer Creek of its cause of action against State Mutual, received by Burnac as security for a pre-existing debt,

is valid under Michigan law. The cause of action so assigned was Deer Creek's claim that State Mutual breached the 1972 Agreement by failing to provide agreed upon capital, and forcing Deer Creek, through means of fraud and duress amounting to "economic blackmail," to enter into the 1973 Agreement from which the mortgage in question was granted. State Mutual contends that under Michigan law claims of fraud and duress are personal and thus may not be assigned.

■ Early Michigan law held that, in general, the right of action for a tort could not be the subject of an assignment. *Finn v. Corbitt*, 36 Mich. 318 (1877). This rule derived from the principle that personal torts did not survive the death of the person injured, and could not be assigned since the right to pursue the cause of action was extinguished with the life of the aggrieved individual. The general rule, however, has been substantially changed by the Michigan Survival Act and subsequent case law which holds that actions deemed to survive death under the Survival Act are also assignable under the common law.

The present Michigan Survival Act states that "all actions and claims survive death." M.C.L.A. § 600.2921, M.S.A. § 27A.2921 (1963).[3] The Committee Comment accompanying the enactment of the statute states the effect of the legislation as follows:

> This section drastically changes the present law, C.L.1948, § 612.32. At common law, personal rights of action died with the person. This seemed manifestly unfair in certain cases, so Survival Acts were written to allow certain actions to survive. There is no good reason for allowing some actions to survive, and not others, apart from cultural inertia. Since the actions which have not survived in the past are tort actions, it is pertinent to consider the theory of tort damages.

**3.** Sec. 2921. All actions and claims survive death. Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to the next section. If an action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for additional damages resulting from death. P.A.1961, No. 236, § 2921, Eff. Jan. 1, 1963.

One purpose of damages in tort is to compensate the injured party. This purpose is defeated if the action does not survive the death of the injured party, or the death of the wrongdoer. Damages in tort are also thought to serve an exemplary purpose, even when not denominated "punitive". This purpose is defeated if the action does not survive.

This section is a logical advance in the legislation in this area. That it has not been made earlier may be due to the unfortunate approach of the statutes in listing those actions which do survive, and thus overlooking those which the statute failed to cover. This section has the added advantage of simplicity in application. Provisions as to substitution of parties are found in Rule 202.

State Mutual's contention that actions for fraud or duress are not assignable is based primarily on *Schmidt v. Gaulker,* 156 Mich. 243, 120 N.W. 746 (1909). In *Schmidt,* a mortgagor had assigned his interest and rights in a supplemental financing agreement to another. The assignee sought to challenge the validity of the mortgage on the grounds that it was procured by fraud and duress. The Michigan Supreme Court ruled that such claims were personal torts and, therefore, not assignable. That conclusion, however, was compelled by the then existing rule that tort claims did not survive death, and claims which did not survive death were not assignable. The present Michigan Survival Act would appear to compel a different result.

■ The effect of M.C.L.A. § 600.2921, M.S.A. § 27A.2921, was noted by the Michigan Court of Appeals in *Detroit v. Bridgeport Brass Co.,* 28 Mich.App. 54, 184 N.W.2d 278 (1970). In a footnote discussion the court stated:

> The assignability of choses in action for personal injury resulting from tortious acts depends, generally, on whether the action survives the death of the injured person; if the action survives the chose is assignable. *It is generally held that the enactment of statutes providing for survival of such actions operates incidentally to remove the restriction on assignability.*

*Id.* at 281 n. 5 (emphasis added). *See also* Michigan Law & Practice, Assignments, § 19, p. 12. Therefore we must assume for purposes of summary judgment treatment that the underlying cause of action for fraud and duress could be validly assigned under Michigan law.

### III.

Assuming as we have that a cause of action for fraud is assignable under Michigan law, it must next be determined whether Deer Creek's cause of action was in fact assigned to Burnac, or whether State Mutual is correct in its contention that only the "proceeds" of the litigation and not the actual right to prosecute the claim were assigned. Again, Burnac claims that the facts concerning the intent of the assignment are in dispute and, hence, that summary judgment was improper.

The language contained in the "assignment of receivables" states that Burnac is assigned all Deer Creek's "right, title, interest, claims and demands in and to the proceeds, whether in the form of judgment, settlement, compromise, or otherwise, resulting from [the State Court action on the 1972 agreement]." In addition, the assignment purports to vest the full right to the cause of action in Burnac with the grantback of a license in Deer Creek to continue in the action. Deer Creek is restricted in its authority in that "any compromise or settlement of said litigation will receive the prior approval of assignee. . . . "

■ Under Michigan law the interpretation of an assignment agreement is ordinarily considered a question of fact, not law. *Keyes v. Scharer,* 14 Mich.App. 68, 165 N.W.2d 498 (1968). The scope of an assignment is gathered from the instrument as a whole and no single clause is dispositive. State Mutual's claim that the assignment is of proceeds only has considerable support in the precise language of the assignment, and is further fortified by Deer Creek's retention of certain rights to continue the litigation in its own name. We nevertheless conclude that the language of

the assignment creates a question of fact which, for purposes of summary judgment, must be resolved in Burnac's favor.[4]

## IV.

Burnac claims, of course, that the Stipulation of Settlement could not have any effect upon its interests because it was entered into by Deer Creek in breach of the latter's agreement not to settle without Burnac's prior consent.

■ Although the language of the Stipulation of Settlement between State Mutual and Deer Creek appears to deal with the litigation as a single action, we do not believe that consolidation of State Mutual's foreclosure action with Deer Creek's removed state court action caused a merger precluding the independent settlement of claims between State Mutual and Deer Creek Park. Rather, each suit maintained its independent status with respect to the rights of the parties involved. In *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331 (1932), the Supreme Court, in determining what effect should be given a consolidation of actions stated:

> [T]he consolidation did not alter the nature of the attack. Under the statute, 28 U.S.C., § 734, consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.

*Id.* at 496–97, 53 S.Ct. at 728 (footnote omitted).[5] We, therefore, consider the effect of the stipulation of settlement in light of the separate character of the consolidated actions.

### A. Burnac as Competing Mortgagee

Initially, State Mutual filed this action against Deer Creek seeking foreclosure of the mortgage held on the Deer Creek project. State Mutual later added Burnac as a party-defendant upon learning of the junior mortgage Burnac had filed on the same property. Deer Creek subsequently agreed to the Stipulation of Settlement whereby it admitted the validity of State Mutual's prior mortgage and vowed not to contest the foreclosure action. Burnac, however, contends that it has not had its day in court as a competing mortgagee, even though it agreed that its mortgage interest was expressly subordinate to State Mutual's.[6]

Although it is undisputed that State Mutual held a prior recorded mortgage, Burnac argues that it relied on representations made by Deer Creek partners Morganroth and Kopitz to the effect that State Mutual's mortgage was invalid. Burnac, therefore, contends it did not in fact intend to take a second mortgage despite the language in the document itself.

■ It is difficult to perceive what bearing Burnac's subjective corporate intent has in determining whether it can elevate a junior mortgage. The fact remains that State Mutual recorded its mortgage fifteen months prior to Burnac. Unless

---

**4.** Regardless of our conclusion, if, as State Mutual has contended, Burnac's rights under the assignment from Deer Creek were only to the proceeds of the fraud litigation, those rights were extinguished by the settlement, there being no proceeds resulting therefrom.

**5.** *See also Alfred Dunhill of London, Inc. v. Cuba*, 425 U.S. 682, 735, 96 S.Ct. 1854, 1881, 48 L.Ed.2d 301 (Marshall, J., dissenting), where it is stated:

> First, the actions against Dunhill and the other importers were not merged; they were simply consolidated for trial in the interest of economy. The intervenors, as substituted plaintiffs in the actions originally filed by the owners, asserted separate causes of action against each importer; no single transaction involved or gave rise to a claim against more than one importer. The actions thus did not lose their separate identities because of the consolidation.

*Accord, In re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439 (1st Cir. 1972); *Cole v. Schenley Industries, Inc.*, 563 F.2d 35, 38 (2d Cir. 1977); *Oikarinen v. Alexian Bros.*, 342 F.2d 155 (3d Cir. 1965); *Belmont Place Associates v. Blyth, Eastman, Dillon & Co., Inc.*, 565 F.2d 1322 (5th Cir. 1978); *DeGraffenreid v. General Motors Assembly Division*, 558 F.2d 480 (8th Cir. 1977); *Geddes v. United Financial Corp.*, 559 F.2d 557, 561 (9th Cir. 1977).

**6.** *See* note 2, *supra*.

that mortgage is somehow shown to be invalid, Burnac's interest must be subject to it. Therefore the issue here, as we see it, is not what Burnac intended in taking its mortgage, but whether State Mutual held a valid prior mortgage. A thorough search of the record and pleadings makes it apparent that Burnac failed to present any admissible evidence in the form of affidavits, depositions, interrogatories or otherwise to support an arguable claim that Deer Creek was unlawfully coerced into executing the mortgage to State Mutual by the latter's fraud and duress. Simply put, there is no admissible evidence to support such a claim. Burnac could not rely solely upon its bare allegations in the pleadings, but was obliged to come forth with sufficient material evidence to raise a material issue of fact concerning these charges. Rule 56(e), Fed.R. Civ.P.

 Viewed most favorably to Burnac the hearsay information was conclusory and failed altogether to supply any inference of fraud and duress. No affidavits were taken from the hearsay declarants themselves, the excuse being that they were unwilling to testify voluntarily. This was an insufficient excuse for failure to comply with the requirements of Rule 56(e). No effort was made to depose these individuals, or to obtain a delay in the court's consideration of the motion until such depositions could be taken. There was no reason for Judge Keith to believe that a lengthy trial on the merits would in fact produce any other admissible evidence bearing on that question in addition to the evidence before him. Under such circumstances we are of the opinion that Judge Keith properly entered a summary judgment of foreclosure of State Mutual's mortgage.

## B. Burnac as Assignee

 The effect of the Stipulation of Settlement on Deer Creek's suit against State Mutual for alleged breach of the 1972 agreement is more difficult analytically. Essentially, Deer Creek requested a dismissal with prejudice of its cause of action. It is with respect to this action that Burnac claims status as an assignee from Deer Creek.[7] That assignment agreement specifically limited Deer Creek's authority to compromise or settle the assigned claim. There is, however, no indication in the record or pleadings that State Mutual ever received notice of the assignment or the limitations prior to entering into the settlement agreement. State Mutual's assertion that "at no time did Burnac tell State Mutual they could not deal with Deer Creek without dealing with them" goes unchallenged in the record here. Also unchallenged is State Mutual's assertion that at the time it entered into the 1973 transaction, by which it conveyed the premises to Deer Creek and took back the mortgage, it knew only that Burnac held a second mortgage interest. This claim is fully supported by Burnac in its Answer to State Mutual's foreclosure complaint, an answer which asserted only that it claimed the benefit of Deer Creek's defenses "as a junior encumbrancer." In short therefore, the pleadings and record before Judge Keith contained no allegation that Burnac claimed a superior right as assignee of any cause of action for fraud on the part of Deer Creek which

---

7. Under Michigan law an assignee of a cause of action acquires the same right, title and interest enjoyed by the assignor. Generally, after assignment the assignor loses all control over the chose and cannot bind the assignee by estoppel or otherwise. *Saginaw Financing Corp. v. Detroit Lubricator Co.*, 256 Mich. 441, 240 N.W.2d 44 (1932). Further, a release of the claim by the assignor is not binding on the assignee unless the compromise and release are made before the person against whom the claim exists has notice of the assignment. *See* Michigan Law & Practice, Assignments, § 71 (1972).

It is noted in this case, however, that the assignee, Burnac, purported to receive an assignment of the entire cause of action with a grant-back of a license in the assignor to further prosecute the claim. In this regard, judgment rendered on claims which have been assigned as security, in an action brought by the assignor with the knowledge and consent of the assignee, is binding upon the assignee. *Lamson v. City of Marshall*, 133 Mich. 250, 95 N.W. 78 (1903).

would require State Mutual to deal only with Burnac.[8] In such circumstances, it is altogether appropriate that State Mutual's settlement with Deer Creek should not be disturbed by Burnac's untimely assertion of a previously undisclosed assignment. This common sense observation finds support in Michigan law.[9]

The provisions of the assignment leaving Deer Creek in ostensible control of the litigation can only be construed as creating an agency between Burnac as undisclosed principal and Deer Creek as agent. The language of the assignment states:

> The foregoing assignment given as security is without any obligation on the part of Assignee to assume any of the obligations of Assignor as Plaintiff in the litigation, to prosecute to conclusion, compromise, or settlement the cause of action against the Defendant therein, and shall not obligate Assignee to perform any of the obligations or to be liable for any claims, damages, or expenses as may be asserted or adjudged against Assignor by virtue of said cause of action or any counterclaim or cross-claim as may be filed against Assignor in connection or in conjunction therewith.

> Assignor represents and warrants to Assignee that it will prosecute to conclusion, compromise, or settlement the cause of action embodied in the litigation described above; that any compromise or settlement of said litigation will receive the prior approval of Assignee and that Assignor will give Assignee notice of the entry of judgment, compromise or settlement, and that the proceeds of said judg-

ment, compromise or settlement will be held by the Court in trust for Assignee until the obligations secured hereby are paid in full. Assignee agrees that so long as no defaults exist under the obligations hereby secured or under this Assignment, Assignor shall have a license to continue the prosecution of the litigation and that immediately upon the occurrence of any default under the obligations hereby secured or under this Assignment, the foregoing license shall cease and terminate and in such event Assignee is hereby expressly and irrevocably authorized to be substituted in full place and stead as Assignor-Plaintiff in the litigation at the sole and unfettered option of Assignee.

Although an agent generally may not compromise or settle a claim without express authority,[10] the principal, by holding out the agent as possessing such authority, may thereby be bound.[11] Clearly such occurred here, for even the fact of assignment was not disclosed to State Mutual.

In *Howell v. Vito's Trucking & Excavating Co.*, 386 Mich. 37, 191 N.W.2d 313 (1971), the Michigan Supreme Court defined a "party" as one who is directly interested in the subject matter, and has a right to make a defense, or to control the proceeding, and to appeal from the judgment. *Id.* at 315. The *Howell* court further stated that the original cause of action is extinguished by judgment no matter what issues were raised and litigated, or even if no issues were raised and judgment is rendered by default.

Under Burnac's own interpretation of the assignment, Deer Creek remained as

---

**8.** The only mention of Burnac's assignee status appeared in its Proposed Amended Answer, and at oral argument on appeal.

**9.** Res judicata is invoked to bar a subsequent suit initiated on a cause of action previously adjudicated between the parties. In order for res judicata to apply the facts or evidence essential to maintain the subsequent cause of action must be identical to the prior suit. *See Mango v. Plymouth Township Board of Trustees*, 33 Mich.App. 715, 190 N.W.2d 285 (1971); *Sheridan Drive Association v. Woodlawn Backproperty Owners Association*, 29 Mich.App. 64,

185 N.W.2d 107, 109 (1970). In addition, it is required that the same parties be involved in each action. *Topps-Toeller, Inc. v. City of Lansing*, 47 Mich.App. 720, 209 N.W.2d 843 (1973).

**10.** *See People's State Bank for Savings v. Bloch*, 249 Mich. 99, 227 N.W. 778 (1929); Michigan Law & Practice, Agency, § 75 (1972).

**11.** *See Palmer v. Roath*, 86 Mich. 602, 49 N.W. 590 (1891); Michigan Law & Practice, Agency, § 75 (1972).

at least the nominal plaintiff in the litigation. We need not plumb the motives of Burnac to observe that by agreeing to this circumstance, it deliberately allowed State Mutual to believe it was still dealing solely with Deer Creek. In such circumstances, State Mutual was fully entitled to rely upon Deer Creek's apparent authority to settle the case. The result, we conclude, is that Burnac was bound, under principles of *res judicata*, by the settlement entered into by its agent, Deer Creek, and that its sole recourse thereafter had to be against Deer Creek for any breach of the assignment agreement. Any other rule would, in our judgment, inject great uncertainty and confusion into the very salutary policy encouraging the settlement of lawsuits. Even more, it would run entirely against commonly accepted principles of agency and *res judicata*. This result seems further validated by *Lamson v. City of Marshall*, 133 Mich. 250, 95 N.W. 78 (1903), where it was determined that judgment rendered on a claim assigned as security, in an action brought by the assignor with the knowledge and consent of the assignee, is binding on the assignee.[12]

Regardless of the restriction requiring prior approval of any settlement in the assignment agreement, Burnac is bound by Deer Creek's stipulation and dismissal of its action. This conclusion primarily results from Burnac's actions in holding out Deer Creek as having authority to control or compromise the litigation. The subsequent deal Deer Creek made with State Mutual, who acted in apparent ignorance of the assignment and restrictions therein,[13] violated the assignment agreement. However, as Judge Keith observed in the court below,

Burnac must look to Deer Creek for redress of this breach.

Finally, Burnac claims, upon a theory which is not too clear in the record, that is possessed an independent security interest in the premises arising from the assignment by Morganroth and Kopitz, Deer Creek partners, of the anticipated proceeds of the 1972 agreement. How this can be asserted against State Mutual or the property itself is not explained. It is clear, however, that if Burnac somehow acquired a security interest in the 1972 agreement between State Mutual and Deer Creek, it in all events failed to perfect that interest or to give notice of its rights therein to State Mutual prior to the rescission of the 1972 contract and the subsequent formation of the 1973 agreement. This particular issue was not addressed by the district court and we consider it as having no merit. Likewise we consider as without merit Burnac's claim that the district judge abused his discretion in refusing to grant its motion for relief to file an amended answer, affirmative defenses and counter-claims, in lieu of the summary judgment. The amendments merely restated in more detail the alleged particulars of the dispute between State Mutual and Deer Creek. Since they could not overcome the legal effects of the undisputed facts which led to the grant of summary judgment, it was apparent that any further amendment to the pleadings would be futile.

Affirmed.

---

**12.** *See also* Moore's Federal Practice, ¶ 0.444[1] ("unless otherwise indicated, a consent judgment and a judgment upon stipulated facts are, also, res judicata of the cause of action in issue.")

**13.** The briefs of the parties are substantially directed to the question of whether, under the circumstances, the doctrine of collateral estoppel applies to bar Burnac's right to contest the superior lien of State Mutual's mortgage. While we view the law of Michigan as unsettled in this area, especially where the estoppel

is asserted to arise from a consent judgment, *see American Mutual Liability Insurance Co. v. Michigan Mutual Liability Co.*, 64 Mich.App. 315, 235 N.W.2d 769 (1975), our analysis of the facts here renders further consideration of this issue unnecessary. Since Deer Creek exercised its right to assign its cause of action to Burnac, but was allowed to remain in the litigation as Burnac's agent, Burnac was a direct party in interest in the litigation and as such was directly bound by the acts of its agent which were within its apparent authority.