852 F.2d 568
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LARWIN MORTGAGE INVESTORS, et al., Plaintiffs,
v.
SUFFOLK CO., et al., Defendants,
Douglas Spicer, Defendant-Appellant,
City of Westland, Intervenor-Appellee.
 Nos. 87-1454, 87-1522.
 United States Court of Appeals, Sixth Circuit.
 July 22, 1988.
 
 Before BOYCE F. MARTIN, Jr., WELLFORD and DAVID A. NELSON, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 Representing that he was the assignee of a certain money judgment entered almost ten years earlier by the United States District Court for the Eastern District of Michigan, and representing further that the judgment had not been fully paid or discharged, appellant Douglas Spicer moved the district court for an order renewing and extending the judgment and reentering it in his name. The judgment debtors (who are now in bankruptcy) did not object, and in due course Mr. Spicer's motion was granted.
 
 
 2
 The original holder of the judgment had created a cloud on the title to a number of parcels of real estate in the City of Westland, Michigan, and elsewhere by recording a notice of levy of execution on any interest the judgment debtors had in the designated parcels. The judgment debtors have sworn that they had no such interest, but the notice of levy was re-recorded after the date of the purported assignment to Mr. Spicer, and Westland homeowners with interests in the parcels described in the notice of levy were given to understand that they would have to come to terms with Mr. Spicer if they wanted to be able to sell their homes free and clear of the recorded encumbrance.
 
 
 3
 The homeowners complained to the City, which itself had real estate interests that were clouded by the notice of levy. Moving to intervene in the lawsuit in which the judgment had been entered, the City sought relief from the order renewing and extending the judgment.
 
 
 4
 The City's motion brought to the attention of the district judge certain facts of which he had been unaware at the time he granted the motion to renew and extend. Among these was the fact that before the judgment debtors received notice of the purported assignment, the original holder of the judgment had entered into a settlement agreement which, by its terms, released the judgment debtors. The district judge also learned that an instrument acknowledging satisfaction of the judgment as to the original holder thereof had been filed within a few hours of the filing in the district court of a notice of the assignment. The judgment debtors attested, by affidavit, that they had not been given any notice of the purported assignment until three days after the date of the release.
 
 
 5
 The district court granted the City's motion to intervene, vacated the order renewing and extending the judgment, ordered that the notice of levy and any similar instruments recorded by Spicer be cancelled and discharged of record, and ordered Spicer to return whatever monies he had exacted from the homeowners as the price of removing the cloud on their titles.
 
 
 6
 The most significant question presented on appeal is whether the district court was wrong in finding, as it did find, that "the settlement and satisfaction of the judgment was binding as to Spicer." Because the record demonstrates that at the time of the settlement agreement releasing the judgment debtors the assignment of the judgment had not been perfected, as against the judgment debtors, by notice to them, we believe that the district court was correct in concluding that the settlement was binding on Spicer. The judgment debtors having been discharged before they were notified of the assignment, the court's order will be affirmed.
 
 
 7
 * Mr. Spicer, a lawyer who appears on his own behalf in this matter, did not ask to testify in the district court. No other witnesses took the stand, no deposition testimony was introduced, and the affidavits contained in the record are not particularly expansive. The facts on which the case turns must be gleaned largely from documentary evidence, and the story that emerges from the documents is in some respects incomplete. With that cautionary note, we shall attempt to detail the salient facts as we understand them.
 
 
 8
 In the early 1970s, it appears, a Michigan couple named Harold and Shirlee Rosin were interested in the construction of a Michigan condominium project financed by a California real estate investment trust known as Larwin Mortgage Investors. The project went sour, and in 1974 Larwin brought a diversity action in federal district court seeking foreclosure of its mortgage and praying for a deficiency judgment against the Rosins as guarantors of the mortgage indebtedness.
 
 
 9
 One of the Rosin's co-defendants, Codco, Inc., filed a cross-claim against the Rosins on a separate loan guarantee. Codco thereafter moved for summary judgment on its cross-claim, and on June 30, 1975, the district court granted the motion. Judgment was entered for Codco against the Rosins in the amount of $398,958.98, plus interest from September 16, 1974, the date on which Codco had filed its cross-claim.
 
 
 10
 In November of 1982 Codco requested the clerk of the district court to issue a writ of execution on the 1975 judgment. In this connection Codco submitted an affidavit executed by its President, Richard Ratkus, stating that the sum of $134,000 was to be credited against the total accrued interest and costs. Taking into account the accrued interest that remained unsatisfied, the net balance due, as of the date of the affidavit, was said to be $451,408.48.
 
 
 11
 The clerk of the court issued a writ of execution to the United States Marshal. The marshal's return indicates that, as instructed by Codco, he "levied execution" by the expedient of recording a notice of levy with the office of the register of deeds of Wayne County, Michigan.
 
 
 12
 The notice of levy, as recorded on December 3, 1982, states that on November 30, 1982, pursuant to the writ of execution, the marshal levied upon all of the Rosins' right, title and interest in some 63 parcels of real estate. A legal description of each parcel was incorporated in the notice of levy.
 
 
 13
 Some two years later, on November 17, 1984, the President of Codco, Richard Ratkus, executed on behalf of Codco a one paragraph instrument of assignment reading as follows:
 
 
 14
 "For value received, Codco, Inc., a Michigan corporation, hereby sells, assigns and transfers to Douglas Spicer, all right, title and interest possessed by Codco, Inc., in and to a certain Judgment of the United States District Court for the Eastern District of Michigan, Southern Division, in case number 4-72200, dated and entered June 30, 1975, in favor of Codco, Inc., and against Harold Rosin, individually, and against Harold Rosin and Shirlee Rosin jointly, in the amount of $398,958.98, plus interest at the rate of 7% per annum from September 16, 1974. Codco, Inc., represents that $25,000.00 has been collected by it or its assigns pursuant to said Judgment since its entry."[1]
 
 
 15
 On November 19, 1984, a lengthy settlement agreement was executed by Codco, Mr. Ratkus individually, and two individuals named Korash and Madorsky. (In one of his briefs Mr. Spicer identifies Messrs. Korash and Madorsky as "co-investors," presumably meaning co-investors with the Rosins.) The settlement agreement--which makes no reference to any assignment to Mr. Spicer--recites that "the parties are desirous of resolving all disputes between and among themselves and certain others, including the disputes which are the subject of [certain designated lawsuits.]" Among the lawsuits named was the one in which Codco obtained a judgment against the Rosins on June 30, 1975; the judgment against the Rosins was specifically identified in the settlement agreement as the "Codco judgment."
 
 
 16
 Paragraph 14 of the settlement agreement gives the Rosins a full release of all liabilities with the exception of certain "Excepted Claims" that do not include the Codco judgment. The release provides, in pertinent part, that "Ratkus and Codco, and their respective ... assigns, release and forever discharge Korash, Madorsky ... Harold Rosin, Shirlee Rosin [and others] ... from and against any and all losses, damages, injuries, claims, demands, liabilities, causes of actions, of whatsoever kind and nature, in law or in equity, known or unknown, and expenses (including reasonable attorneys' fees), heretofore accrued or which may hereafter accrue...."
 
 
 17
 Paragraph 8 of the settlement agreement provides that "Codco shall execute a Satisfaction of Judgment pertaining to the Codco judgment and same shall be tendered to Korash's and Madorsky's counsel for immediate filing with the Court." Paragraph 11 of the settlement agreement commits the parties to execute a form of consent order for entry in three lawsuits (not including this one) in which Codco appeared as plaintiff. Subject to certain exceptions not relevant here, the consent order cancels and discharges, as to Codco's interest therein, various designated instruments one of which is the notice of levy recorded on December 3, 1982, in connection with the Codco judgment. It has never been claimed, and the record contains no basis for supposing, that Korash and Madorsky, or their counsel, had any knowledge of the assignment of the Codco judgment at the time Codco released the Rosins.
 
 
 18
 At 12:48 p.m. on November 19, 1984--the day on which the settlement agreement releasing the Rosins was executed--the notice of levy in question was re-recorded in the office of the Wayne County Register of Deeds. A handwritten note in the margin of the document states that the notice of levy was "being re-recorded to reflect that on ... 11-30-82, Douglas Spicer had a security interest in Codco's judgment and this ... notice of levy." (Nothing in the record before us indicates that Mr. Spicer did, in fact, have a security interest in Codco's judgment in 1982 or, for that matter, at any other time.)
 
 
 19
 On November 21, 1984, United States District Judge Richard F. Suhrheinrich apparently signed a consent order in the form prescribed by the settlement agreement. At 3:56 that afternoon the clerk of the district court filed a satisfaction of judgment notice in the lawsuit that is now before us on appeal. This satisfaction of judgment, executed for Codco by Ratkus, was dated November 19, 1984. The text reads as follows: "[t]he summary judgment entered in favor of Codco, Inc., a Michigan Corporation, against Harold Rosin, individually, and against Harold Rosin and Shirlee Rosin, jointly, on June 30, 1975, has been satisfied in full, as to Codco, Inc. only."
 
 
 20
 On the morning of November 21, 1984--shortly before the filing of the satisfaction of judgment--the clerk of the district court filed in this lawsuit a "Notice of Assignment of Judgment" bearing the signature of Douglas Spicer as "judgment assignee." The notice, dated November 19, 1984, reads as follows:
 
 
 21
 "To: the Clerk of the Court
 
 
 22
 Please take notice that on November 17, 1984, all right, title and interest in and to a certain Judgment in the above entitled case, which was dated and entered June 30, 1975, in favor of Codco, Inc., and against Harold Rosin individually, and against Harold Rosin and Shirlee Rosin, jointly, in the amount of $398,958.98, plus interest, at the rate of 7% per annum from September 16, 1974, was assigned by Codco, Inc. to the undersigned. A copy of the Assignment is attached."
 
 
 23
 On June 26, 1985, Mr. Spicer filed his motion to renew and extend the Codco judgment, requesting that a new entry of the judgment be made in his favor. The motion--which noted that under Michigan's statute of limitations the judgment would expire on June 30, 1985, unless extended--made these representations, among others:
 
 
 24
 "3. On November 17, 1984, Codco, Inc. sold, assigned and transferred to Douglas Spicer all right, title and interest possessed by Codco, Inc. to the [June 30, 1975] Judgment. A copy of the assignment is attached hereto as Exhibit 2.
 
 
 25
 4. Said judgment has not been paid fully or discharged, except for a sale held on October 29, 1982 at which $8500 was netted."[2]
 
 
 26
 On September 4, 1985, no response to the motion having been received from the Rosins, the district court entered orders substituting Mr. Spicer as a party in place of Codco and renewing and extending the judgment in favor of Mr. Spicer in the full amount of $398,958.98, plus interest from September 16, 1974, "less $8,500.00 heretofore collected."
 
 
 27
 On July of 1986 Mr. Spicer recorded a "Notice of Claimed Interest" relating to five of the parcels of real estate described in the 1982 notice of levy. The 1986 document described the purported assignment of November 17, 1984, and concluded with this language:
 
 
 28
 "Douglas Spicer acknowledges and confirms the existence of the Assignment of interest in notice of Levy dated November 14, [sic] 1984 and further confirms that he is the purchaser, assignee and transferee of all the right, title and interest in Codco, Inc. as it existed on November 17, 1984, acquired under the Notice of Levy on real estate, in the five parcels described in the annexed Exhibit A."
 
 
 29
 The City of Westland filed its motion for intervention and for relief from judgment in March of 1987. The motion, which was verified by an affidavit of the City Attorney, represented among other things that the title to certain real property in which the City had an interest was clouded by the notice of levy recorded on December 3, 1982; that the notice of levy was causing problems for numerous innocent citizens of Westland, because the notice "purports to extend to Harold and Shirlee Rosin's [sic] interest in property which involves scores and scores of homes in the City of Westland and elsewhere;" that the City had recently advised Spicer that the Rosins had "no interest whatsoever in any of the property subject to the Notice of Levy at the time of and subsequent to the recording of the Notice ... and [the Rosins] were currently pursuing bankruptcy proceedings;" that "[s]ubsequent to his re-recording of the Notice of Levy in 1984, DOUGLAS SPICER has quietly collected or attempted to collect, money from various Westland homeowners to remove the cloud on the title to their homes created by the recording of the December 3, 1982, Notice of Levy;" that Spicer had refused to discharge the notice of levy "despite having been shown conveyances from the Rosins' [sic] to others for each of the five (5) parcels in which SPICER had most recently claimed an interest, which conveyances occurred at least nine (9) years prior to the original Notice of Levy;" that Codco's settlement agreement, a copy of which was attached to the motion, had been executed on November 19, 1984; and that the settlement agreement was binding upon Spicer "for lack of notice ... of the assignment."
 
 
 30
 One of the exhibits accompanying the City's motion was an affidavit in which Harold and Shirlee Rosin swore that "[a]t no time prior to November 22, 1984, was there any notice given to us that Douglas Spicer, Attorney at Law, had received ... an assignment of CODCO, Inc.'s interest in any of the ... causes of action [asserted in the present suit.]" The Rosins' affidavit also stated that "[o]n or about December 3, 1982, the date of recording of a notice of levy mentioned in Paragraph 10 of the Settlement Agreement dated November 19, 1984 ... neither of us had an interest in any of the properties listed [therein]."
 
 
 31
 Mr. Spicer filed a timely response to the City's motion. The response challenged the City's standing to intervene, asserted that "[t]he settlement agreement does not purport to satisfy Spicer's interest in the judgment or levy," and raised a number of other issues. Spicer's response was accompanied by an affidavit in which Richard Ratkus, President of Codco, stated among other things that
 
 
 32
 "I determined that Harold and Shirlee Rosin had interests of record in the property levied upon by the U.S. Marshal in the Notice of Levy on real estate [recorded on December 3, 1982]. Unless Harold and Shirlee Rosin have parted with their interests in numerous properties via unrecorded transactions prior to December 3, 1982, they are not telling the truth in their affidavit when they say they had no interest in any of the properties on December 3, 1982. This conclusion is based on my own investigations of the public records at the Register of Deeds several years ago."
 
 
 33
 At a pretrial conference held on April 8, 1987, District Judge Suhrheinrich expressed puzzlement and concern that Mr. Spicer should have moved to extend and renew a judgment "without any mention that the judgment had been satisfied." Mr. Spicer replied that the satisfaction was in the court's file, that Codco had purported to satisfy the judgment only as to itself, and that the date of the assignment preceded the date of the satisfaction. Judge Suhrheinrich was not persuaded; he told Mr. Spicer "I would not have signed your order had I known the judgment [you wished me to extend] had been satisfied...."
 
 
 34
 In a memorandum opinion and order entered on April 16, 1987, the district court granted the City's motion to intervene. The court's opinion noted that the City "has an interest relating to the property which is the subject of the action and that the [City] is so situated that the disposition of this matter may impair or impede the [City's] ability to protect its interest. Usery v. Brandel, 87 F.R.D. 670 (Mich.1980)." The order renewing and extending the Codco judgment was vacated, Mr. Spicer was ordered to return the money he had collected, and the instruments recorded pursuant to the judgment were cancelled, all on the following ground:
 
 
 35
 "Because the obligors (the Rosins) had no notice of the assignment, the release is binding upon the assignee. State Mutual Life Assurance Co. of American [sic] v. Deer Creek Park, 612 F.2d 259, 269 (6th Cir.1979). Spicer does not claim that the obligor was given notice of the assignment prior to the settlement and satisfaction. The Court finds that the settlement and satisfaction of the judgment was binding as to Spicer."
 
 
 36
 Mr. Spicer has appealed from this order and from a supplemental order, entered on April 30, 1987, in which the court set forth legal descriptions of the specific parcels of land from which the judgment lien, levy, and notice of interest were being lifted.
 
 II
 
 37
 * Mr. Spicer contends that the district court erred in allowing the City of Westland to intervene under Rule 24(a), Fed.R.Civ.P. We see no error in this respect.
 
 
 38
 Rule 24(a)(2), captioned "Intervention of Right," provides in pertinent part that:
 
 
 39
 "Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property ... which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
 
 
 40
 No claim is made here that the City's application to intervene was not timely, and the district court found that it was timely. The district court also found that the City itself had property interests that were adversely affected by the judgment lien; this finding, too, is unchallenged. The Rosins had failed to object to Mr. Spicer's motion to renew and extend the judgment, so the Rosins could hardly be counted on to represent the City's interest adequately. The City had standing to intervene without reference to the doctrine of parens patriae, see United States v. City of Pittsburg, California, 661 F.2d 783, 786-7 (9th Cir.1981) (municipalities may "sue to vindicate such of their own proprietary interests as might be congruent with the interests of their inhabitants"), and the district court's decision to allow intervention under Rule 24 seems unassailable.
 
 
 41
 It is probably true that the City could not have maintained an action solely to require the return of the monies City residents had paid Mr. Spicer in order to clear their titles, or to cancel Mr. Spicer's 1986 "Notice of Claimed Interest," assuming that the 1986 notice related only to parcels in which the City had no interest. The fact remains, however, that in its capacity as landowner the City did have standing to seek a determination that Mr. Spicer was bound by his assignor's release of the Rosins, and it did have standing to request the court to rescind its order substituting Mr. Spicer for Codco and renewing and extending the Codco judgment as a Spicer judgment. Those core issues having been properly raised and having been decided against Mr. Spicer, it seems to us that if the issues were decided correctly, the remedial actions ordered by the court were entirely appropriate.
 
 
 42
 It is clear that the court would not have allowed Mr. Spicer to be substituted and would not have granted his motion to extend and renew had the court been aware of the fact that Codco had released the Rosins on November 19, 1984. If, Mr. Spicer's representation to the contrary notwithstanding, the Codco judgment had been discharged before the assignment of the judgment was perfected as to the Rosins, the district court unquestionably had the power to correct the orders in which Spicer had been substituted for Codco and the judgment had been extended beyond the ten-year limitations period. And if Spicer had exacted monies and recorded a notice of claimed interest on the strength of a court order that ought never to have been entered, we believe that the power to correct the order under Rule 60(b), Fed.R.Civ.P., included the power to direct the return of the monies and the cancellation of the notice.[3]
 
 B
 
 43
 There is no dispute as to the fact that on November 19, 1984, Codco entered into a settlement agreement wherein, for good and sufficient consideration, Codco released the Rosins from their liability under the judgment entered against them on June 30, 1975. (It is true that the Rosins were not signatories to the settlement agreement, and it has not been shown that the Rosins paid Codco anything in exchange for the release; under the third party beneficiary doctrine that has long been followed in Michigan, however, there was no requirement that the consideration for the release flow from the Rosins.)
 
 
 44
 Neither is there any dispute as to the fact, established by the Rosins' affidavit, that the Rosins did not receive actual notice of Codco's purported assignment of its judgment until three days after the date of the settlement in which Codco released the Rosins. And under the Michigan law, as this court declared in State Mutual Life Assurance Co. of America v. Deer Creek Park, 612 F.2d 259, 268 n. 7 (6th Cir.1979), "a release of the claim by the assignor [Codco, in our case] is not binding on the assignee [Spicer] unless the compromise and release are made before the person against whom the claim exists [Rosin] has notice of the assignment." (Emphasis supplied.) Where the person against whom the claim exists has not received notice of the assignment, as we went on to say in that case, "it is altogether appropriate" that the assignor's settlement "should not be disturbed by [the assignee's] untimely assertion of a previously undisclosed assignment." Id. at 269.
 
 
 45
 If in the case before us the Rosins had paid the judgment in full, not knowing that Codco had previously executed an assignment of the judgment to Spicer, we take it that no one could think it likely that Spicer would be allowed to make the Rosins pay a second time. There is a distinction between discharge of a debt by payment and discharge by release, however, and Mr. Spicer argues that in the case of a discharge by release, as opposed to a discharge by payment, prior notice of the assignment need not be given to the obligor in order to prevent the discharge from being effective against the assignee.
 
 
 46
 Professor Corbin disagrees: "If any one of these methods of discharge [including discharge by release] has occurred ... prior to [receipt of] notice of the assignment by the obligor, the discharge is effective against the assignee." 4 Corbin on Contracts, Sec. 894. Judge Suhrheinrich agreed with Professor Corbin, and we are aware of no Michigan caselaw suggesting that he was wrong to do so.
 
 
 47
 It remains to be considered, finally, whether constructive notice of the assignment was given by the re-recording of the notice of levy, with its cryptic notation regarding Mr. Spicer's "security interest" in Codco's judgment, or by the recording of the assignment of Codco's interest under the notice of levy. Both documents were recorded on the afternoon of November 19, 1984, the day on which Codco executed the settlement agreement releasing the Rosins. We know the time of day when the recordings took place, but we do not know the time of day when the settlement instrument was signed.
 
 
 48
 If we were to assume that the execution of the settlement came after 3:07 p.m., when the assignment was recorded, and assuming that the recorded assignment is properly before us even though it was not before the district court in April of 1987, we would still not be inclined to hold that the mere recording of either or both of the documents in question should be deemed to have given the Rosins instant notice of Mr. Spicer's interest. The Rosins had no reason to check the register of deeds office, as a subsequent encumbrancer or purchaser might have had reason to do, and the recording did not constitute notice to the Rosins. See Tri City Roofers, Inc. v. Northeastern Industrial Park, 91 App.Div. 769, 458 N.Y.S.2d 7, 9 (3d Dept.1982), aff'd 61 N.Y.2d 779 (1984): "While the assignment was filed in the County Clerk's office, this is not notice to the judgment debtor but rather to subsequent encumbrancers and purchasers...." (Citation omitted.)
 
 
 49
 The orders entered by the district court on April 16 and April 30, 1987, are AFFIRMED.
 
 
 50
 WELLFORD, Circuit Judge, concurring in part and dissenting in part:
 
 
 51
 With full appreciation for the court's per curiam effort in setting out with clarity the confusing facts in this case, I cannot agree with the entirety of its disposition. I agree with the decision that the City of Westland was properly permitted to intervene in this case to the extent that the district court permitted intervention to protect the City's interest in its own property which was adversely effected by Spicer's actions. I agree further that the City had no right of action to seek the return of monies paid to Spicer by others who happened to be City residents as to parcels of land "in which the City had no interest." In sum, in my view, the City had no right to act as parens patriae as to resident property owners of other land which may have been involved in Spicer's activities. The City was not acting as a class representative. The City, therefore, could seek district court action, whether equitable or legal in nature, only by virtue of its standing as a property owner and to the extent only of its own property.
 
 
 52
 I would hold, therefore, that the district court had authority only to order Spicer to return to the City any sums paid for a release, not as to others not a party to this proceeding. I realize, of course, that the effect of the district court order may entitle other property owners to seek relief from Spicer in light of this court's affirmance of the district court's order as it relates to the City of Westland.
 
 
 
 [1]
 In a reply brief relating to a supersedeas bond motion filed subsequent to entry of the principal order appealed from here, Mr. Spicer advised the district court--apparently for the first time--of the existence of a second assignment executed by Ratkus on behalf of Codco on November 17, 1984. The second assignment, a copy of which was attached to Spicer's brief, recited that "for the consideration of legal services of value of $1200.00 (One thousand two hundred dollars)," Codco assigned to Spicer all its right, title and interest acquired under the notice of levy. The assignment bears a stamp indicating that it was recorded by the Register of Deeds of Wayne County at 3:07 p.m. on November 19, 1984
 Mr. Spicer indicated at oral argument that the twelve hundred dollars' worth of legal services was the only consideration he had given Codco for the assignment to him of the judgment and Codco's interest in the notice of levy of execution. This seems a fairly modest price to pay for a judgment lien which, with accumulated interest, had been approaching half a million dollars as far back as 1982.
 
 
 [2]
 The attentive reader may recall that on one occasion in November of 1982 Mr. Ratkus swore that the Rosins were entitled to be credited with $134,000, while a few days earlier he represented that Codco had collected $25,000 on the judgment. Now Mr. Spicer was telling the court that only $8,500 had been collected. The reason for these discrepancies has not been explained
 
 
 [3]
 At the conference on April 8, 1987, the district court remarked that Mr. Spicer's filing of a motion to extend and renew the judgment without mentioning that the judgment had been satisfied "smells like fraud to me." In its memorandum opinion of April 16, 1987, the court found "that Spicer failed to inform the Court that a satisfaction of the judgment had been previously entered, and the Court was misled by Spicer's representations." Rule 60(b), by its terms, "does not limit the power of a court to ... set aside a judgment for fraud upon the court," and a claim of fraud on the court may be raised by a non-party. Southerland v. Irons, 628 F.2d 978, 980 (6th Cir.1980). In view of the disposition stated above, we need not decide whether Mr. Spicer did, in fact, commit a fraud on the court